Ruggles, C. J.
 

 {Dissenting)
 
 — It cannot be right, to say
 

 that the time specified in the contract for the delivery of the castings, was for the benefit of the plaintiff alone; the defendant, undoubtedly, had an interest in it, as well as the plaintiff. The defendant was the owner of the furnace where it was expected the castings would be made; and it might be much more to his advantage, to manufacture the articles himself, than to purchase them ready made, or to employ others to make them. He , _ , _ retained *his interest in the furnace until the * 594 I J spring of 1845, and then parted with it. This was a year after the time fixed for the performance of the agreement, and two years before the plaintiff demanded the payment of the balance, in wagon-boxes and ploughshares. Besides, the price and value of the articles demanded may have been greater, at the time of the demand, than they were at the time fixed in the contract for the delivery of the castings. If the payee may postpone the performance of the agreement, by postponing the selection of the articles,, and make the selection, at an indefinite period afterwards, it gives him an advantage in speculating upon the fluctuation of
 
 *541
 
 prices, at the expense of the payer, which these parties, certainly, never contemplated. The time specified for the performance of the contract was, therefore, a material and essential part of it, and neither party could vary it without the consent of the other. It is to be inferred, however, that both parties did assent to the extension of the time, until the first of June 1844.
 

 In October 1843, the defendant requested the plaintiff to make his selection of the castings under the contract, and complained of his delay in doing so. On the 30th January, the plaintiff selected a few articles, and requested the defendant, in writing, not bo deliver any other castings than such as the plaintiff should select and write for. On the 14th of February 1844, he selected, by letter, some other articles, and then said, “ In relation to the remainder of the castings that I am to receive on your note, except the load above referred to, I will extend the time of the delivery of the castings on the note, until the first day of June next,
 
 and you must not send
 
 or
 
 bring any, unless I give you notice first, what hind I want.”
 
 The castings selected by the plaintiff were delivered by the defendant, and the controversy is in relation to the balance undelivered, as to which no selection or demand was made by the plaintiff, until March 1847, when the plaintiff selected and specified the particular articles he desired to have, and demanded payment of the balance due in those articles.
 

 Where a note is payable in goods, at a specified time, and the *goods are to be selected by the payee, he must make the selection, before the time *- fixed for payment, in order that the payer may perform the contract, according to its terms. But the payee does not lose the entire benefit of the contract, by omitting to make the selection ; the payer may, in that case, select the goods himself,' and a delivery of goods selected by the payer is, in such case, a sufficient performance of the contract on his part. Danforth the payer, in the
 
 *542
 
 present case, might, if he had not been forbidden by the plaintiff, Gilbert, have performed his contract, by delivering castings of his own selection; and perhaps, he might have performed it in that way, although he was forbidden to do so. But it is very clear, that the plaintiff, by forbidding the defendant’s^ delivery of the castings, until the plaintiff had made his selection, and by omitting to make his selection, until after the time when he ought to have done so had elapsed, lost his right of selection, at least, if he did not lose the benefit of the contract. And it is equally clear, that he ought not be permitted to maintain an action against the defendant for not doing that which he had forbidden him to do.
 

 On the first of June 1844, when the extended time for performance expired, if the defendant had any duty to perform, under the contract, it was, to pay the balance due on the note, in castings of his own selection. 'This duty he was excused from performing, by the plaintiff’s own consent; and not consent merely, but prohibition; and the excuse remained good, at least, until the prohibition was revoked; this has not been done. In March 1847, more than three years after the time fixed for the performance of the contract, the plaintiff demanded payment, in castings of his own selection, and has brought his action for their non-delivery; this he had no right to do. If he had, at the time of that demand, any right remaining,
 
 under the contract,
 
 it was the right to demand of the defendant a performance, in the manner in which the defendant would have been bound to perform, if he had not been forbidden; that is to say, by delivering castings of the defendant’s selection. This the plaintiff did not demand, and his refusal to accept * Roe
 
 i
 
 suc-h performance ^remained, and still remains, -I unrevoked. Until that refusal shall have been withdrawn, by notice thereof to the defendant, the plaintiff ought not to recover. Whether, after a withdrawal
 
 *543
 
 of the prohibition, he can maintain an action, it is not necessary to decide.
 

 If the plaintiff is allowed to recover, it must be on the ground, that the defendant was bound to deliver castings of his own selection, on the first of June 1844, notwithstanding he was expressly forbidden by the plaintiff to do so; to this I cannot assent. If the promissor be prevented from performing his contract by the act of the promissee, he will be discharged from liability for nonperformance. (Story on Cont. § 976.) Such an act was done by the promissee in this case. The prevention, it is true, was not by any act of forcible resistance, but that is not necessary, to excuse the defendant for not performing. If the condition be to build a house, and the obligee, or another, by his order, hinders the obligor from coming upon the land,
 
 or says that it shall not be built,
 
 the performance of the condition shall be excused. (Com. Dig. Condition, L. 6.) After having expressly directed the defendant not to deliver castings of his own selection, the plaintiff ought not to be permitted to say, that he did not prevent the delivery. This direction was equivalent to a refusal to receive castings of the defendant’s selection, and was a waiver of the tender and delivery of such castings; the tender would have been nugatory.
 
 (Bellinger
 
 v.
 
 Kitts,
 
 6 Barb. 281;
 
 Franchot
 
 v.
 
 Leach,
 
 5 Cowen 508.)
 

 On the 30th of October 1843, when the defendant wrote to the plaintiff, requesting him to make his selections, so that he might be able to furnish the castings in season, he intimated his suspicion, that the plaintiff, by delaying to select, intended to “fix him to pay the money,” instead of the castings. The subsequent correspondence and conduct of the plaintiff, leaves a strong impression on my mind, that the suspicion was well founded; such a design deserves no encouragement. The defendant appears to have been ready and willing
 
 *544
 
 *
 
 KQ„
 
 to perform his *contract faithfully; and it seems J to me, to have been the plaintiff’s fault, that it was not so performed.
 

 The judge directed the jury to find a verdict for the plaintiff on the evidence given; that is the substance and effect of his charge. The defendant was not bound to specify his objections to the reasoning of the judge which led to that direction; the exception was, therefore, sufficient. I think, a new trial ought to be awarded.
 

 Judgment affirmed.